UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NANCY KING, and THE OCCUPATIONAL
HEALTH CENTER, INC.,

    Plaintiffs,

v.                                  Case No. 8:16-cv-2651-T-33TBM

BOARD OF COUNTY COMMISSIONERS,
POLK COUNTY, FLORIDA, KANDIS
BAKER-BUFORD, individually,
LEA ANN THOMAS, individually,
and JIM FREEMAN, individually,

    Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Board of County Commissioners, Polk County, Florida's Motion to Dismiss (Doc. # 36), Kandis Baker-Buford's Motion to Dismiss (Doc. # 34), Lea Ann Thomas's Motion to Dismiss (Doc. # 35), and Jim Freeman's Motion to Dismiss (Doc. # 37). Plaintiffs Dr. Nancy King and the Occupational Health Center, Inc., filed responses on December 7, 2016. (Doc. ## 40, 41). For the reasons that follow, the Court grants in part and denies in part the Motions.

**I.   Background**

King is the owner and employee of the Occupational Health Center (OHC), which contracts with Polk County to provide medical services. (Doc. # 23 at ¶¶ 10-11). Through OHC, King worked as the occupational medicine medical director for the County from 2000 until March of 2016. (Id. at ¶¶ 10, 48). The contract was renewed for three consecutive five year terms without the County using a bidding process. (Id. at ¶ 10). King's duties included "overs[eeing] the administration of physicals, drug testing, and worker's compensation claims" and "performing all the fitness-for-duty evaluations" for the County. (Id. at ¶ 12).

In December of 2013, one of King's physician assistants performed a fitness-for-duty examination on Mr. J,[1] who had been recruited to be a firefighter by the County in its effort to increase diversity. (Id. at ¶ 13). The physician assistant determined that Mr. J was not qualified to be a firefighter. (Id.). Yet, in November of 2014, King learned that Mr. J was in the County's firefighter training program. (Id. at ¶ 14). The County again asked King to review Mr. J's medical records and make a fitness-for-duty determination based on the

---

[1] For privacy reasons, the Amended Complaint uses the pseudonym Mr. J, as does the Court.

2

records. (Id.). King stated that she would need to personally examine Mr. J to make that determination. (Id.).

A few days later, the County's director of risk management, Michael Kushner, asked King to tell Baker-Buford, the County's human resources director and diversity director, that King would be examining Mr. J. (Id. at ¶ 15). Baker-Buford told King that she could not re-examine Mr. J because Mr. J's personal physician had already cleared him for duty. (Id. at ¶¶ 16-17). King reported Baker-Buford's refusal to Kushner, who later requested in an email that King review Mr. J's medical records "to determine whether or not they contained falsified medical information." (Id. at ¶¶ 18-19).

When King requested Mr. J's medical records that had been provided to the employee health clinic, she discovered that Baker-Buford herself had submitted some of Mr. J's records, although employees typically submit their own. (Id. at ¶ 19). After reviewing the records, King emailed Kushner and suggested that Mr. J undergo an examination by a specialist for a second opinion. (Id. at ¶ 20). According to King, her email to Kushner "reported, at the very least, a violation of [the County's] policies on medical clearance requirements for firefighters working for [the County] and

interference in the medical clearance requirements for firefighters." (Id.).

An appointment with a specialist was scheduled in February of 2015, but the specialist received a phone call from a woman purporting to be Mr. J's attorney cancelling the appointment. (Id. at ¶¶ 21-23). A public records request revealed that the phone call had been made from an employee's phone in Baker-Buford's department. (Id. at ¶ 23). Subsequently, Kushner emailed Baker-Buford and emphasized to her that King "had sole discretion in making medical determinations on behalf of [the County]," but Baker-Buford insisted that King should not have chosen the specialist to examine Mr. J. (Id. at ¶ 24).

At that time, King tried but was unable to arrange a meeting with either the county manager, Freeman, or the deputy county manager, Thomas, to discuss her concerns. (Id. at ¶ 25). Thereafter, King contacted Mr. J's physician and asked him whether he thought Mr. J met the specific physical guidelines for firefighters. (Id. at ¶ 26). The doctor "admitted that he had been unaware of the guidelines" and that Mr. J was not medically fit. (Id. at ¶ 28). As a result, Mr. J was dismissed from firefighter training, but was still being considered for an EMT position. (Id. at ¶¶ 34-36). After

4

a different physician concluded that more tests were required to determine whether Mr. J was medically fit to be an EMT, another deputy county manager informed King that the County would not require Mr. J to take the tests. (Id. at ¶ 37).

Eventually, King met with the county manager, Freeman, and explained her concerns over Mr. J's fitness and Baker-Buford's involvement, "which [King] understood to constitute both violations of law, rule or regulation" and "malfeasance, misfeasance or gross misconduct" by the County. (Id. at ¶ 38). This disclosure of her public safety concerns was not part of King's ordinary job duties. (Id.).

Allegedly in retaliation for King's disclosure and refusal to certify Mr. J, the County put the occupational medicine medical director contract out for bidding. (Id. at ¶ 40). King submitted her proposal and attended an interview with the selection committee, which included Thomas. (Id. at ¶ 44). During the interview, Thomas asked whether King would handle Mr. J's certification differently if she were able. (Id.). Later, King was informed that the committee could not agree to make a recommendation for either King or the other candidate. (Id. at ¶ 46). On March 24, 2016, the County's "procurement director formally rejected all proposals for the occupational health program." (Id. at ¶ 48). However, when

5

King later spoke with two members of the selection committee, they informed King that the committee had voted to give her the contract. (Id. at ¶¶ 51-54).

On September 15, 2016, King and OHC filed their Complaint against the Board of County Commissioners for Polk County, as well as Freeman, Baker-Buford, and Thomas in their individual capacities, alleging that they violated her First Amendment rights and Florida's Whistleblower Act for public employees, Section 112.3187, Fla. Stat., by retaliating against her for reporting her public safety concerns. (Doc. # 1).

After Defendants moved to dismiss, King and OHC filed an Amended Complaint on November 4, 2016. The Amended Complaint contains four counts: (I) Florida whistleblower retaliation claim against the County by King; (II) Florida whistleblower retaliation claim against the County by OHC; (III) First Amendment retaliation claim, brought under 42 U.S.C. § 1983, against the individual Defendants by King; and (IV) a § 1983 First Amendment retaliation claim against the County by King. (Doc. # 23).

On November 18, 2016, all Defendants filed Motions to Dismiss the First Amended Complaint. (Doc. ## 34-37). King and OHC filed responses on December 7, 2016. (Doc. ## 40-41). The Motions are ripe for review.

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the

complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. Analysis

### A. First Amendment Retaliation Claim against the Board of County Commissioners

The First Amendment protects independent contractors from adverse actions taken by the government in retaliation for their exercise of the freedom of speech. Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr, 518 U.S. 668, 673 (1996). But, the First Amendment does not guarantee contractors "absolute freedom of speech." Id. at 675. Rather, the balancing test commonly applied in the employment context determines the extent of their protection. Id. at 673.

Thus, King's First Amendment claims, Counts III and IV, are governed by a four-stage analysis. Moss v. City of Pembroke Pines, 782 F.3d 613, 617 (11th Cir. 2015)(citing Carter v. City of Melbourne, Fla., 731 F.3d 1161, 1168 (11th Cir. 2013)). The first step is for the Court to "consider whether [King's] speech was made as a citizen and whether it implicated 'a matter of public concern.'" Id. (quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987)). These first two questions are "questions of law that are decided by the Court." Id. at 618 (citing Battle v. Bd. of Regents for Ga.,

8

468 F.3d 755, 760 (11th Cir. 2006)). Only if this threshold requirement is met will the Court "then weigh [King's] First Amendment interests against the City's interest in regulating [her] speech to promote 'the efficiency of the public services it performs through its employees.'" Id. at 618 (quoting Rankin, 483 U.S. at 384).

The determination of whether an employee spoke as a citizen concerns whether the speech "owes its existence to a public employee's professional responsibilities." Garcetti v. Ceballos, 547 U.S. 410, 421-22 (2006). However, the phrase "owes its existence to . . . must be read narrowly to encompass speech that an employee made in accordance with or in furtherance of the ordinary responsibilities of her employment, not merely speech that concerns the ordinary responsibilities of her employment." Alves v. Bd. of Regents of the Univ. Sys. of Ga., 804 F.3d 1149, 1162 (11th Cir. 2015).

Thus, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee — rather than citizen — speech." Lane v. Franks, 134 S. Ct. 2369, 2379 (2014). Instead, the Court considers relevant practical factors including "the employee's job description, whether the speech

9

occurred at the workplace, and whether the speech concerned the subject matter of the employee's job." Alves, 804 F.3d at 1161. However, these factors are not dispositive. Id. Also, an employee's job duties are interpreted practically because courts recognize that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." Garcetti, 547 U.S. at 424-25.

King alleges that reporting to Freeman was not a part of her typical duties and thus was not employee speech. (Doc. # 23 at ¶ 38). Rather, King asserts that her duties included "performing all the fitness-for-duty evaluations" required by the County. (Id. at ¶ 12). King states that she went to Freeman because "her responsibility to [the County] was to make sure that personnel were medically fit for duty, and that she would not compromise her medical judgment." (Id. at ¶ 38).

Although King alleges that she had concerns for the public's safety, King made all of her disclosures to her employer rather than the public. See Alves, 804 F.3d at 1161 (noting that whether speech occurred in the workplace is relevant but not dispositive). King does not allege that she contacted the media, or spoke out about the implementation of firefighter fitness requirements at a city council meeting,

or made her concerns public in any other way. Cf. Boyce v. Andrew, 510 F.3d 1333 (11th Cir. 2007)(finding caseworkers spoke as employees and noting that one employee's "complaints, although more often in a written format as a letter or memorandum to a supervisor, were not sent to an outside entity"); McShea v. Sch. Bd. of Collier Cty., 58 F. Supp. 3d 1325, 1339 (M.D. Fla. 2014)(denying motion to dismiss retaliation claim and noting "[i]f McShea voiced her concerns to only Defendants, the Court might agree with Defendants' conclusion that McShea's speech qualifies as employee speech").

Taking as true King's allegation that she did not ordinarily report to Freeman, King's complaints regarding the breach of procedures concerning Mr. J were made so that she could fulfill her duties as occupational medicine medical director by correcting what King considered improper conduct by Baker-Buford. See Alves, 804 F.3d at 1164-65 ("Each complaint in the Memorandum was made in furtherance of [plaintiffs'] ability to fulfill their duties with the goal of correcting Dr. Lee-Barber's alleged mismanagement, which interfered with [plaintiffs'] ability to perform."); see also Winder v. Erste, 566 F.3d 209, 215 (D.C. Cir. 2009)("[Employee's speech] was an attempt to ensure proper

11

implementation of [his duties] and was therefore offered pursuant to his job duties."). Indeed, King "had sole discretion in making medical determinations on behalf of [the County]," a discretion which Baker-Buford's actions impeded. (Doc. # 23 at ¶ 24).

As the Eleventh Circuit explained,

> [W]e do not agree that speech regarding conduct that interferes with an employee's job responsibilities is not itself ordinarily within the scope of the employee's duties. Implicit in Appellants' duty to perform their roles as psychologists, committee members, supervisors, and coordinators is the duty to inform, as Appellants put it, "those that would appear to have the most need to know and best opportunity to investigate and correct" the barriers to Appellants' performance.

Alves, 804 F.3d at 1165. King reported Baker-Buford's involvement in Mr. J's fitness evaluation to Freeman and Thomas because they would have the opportunity to end Baker-Buford's interference with King's performance of her duty to administer all fitness evaluations for the County. Cf. Mpoy v. Rhee, 758 F.3d 285, 291 (D.C. Cir. 2014)(finding teacher spoke as an employee when he sent email to the school district administration that primarily "related to the misbehavior of Mpoy's teaching assistants").

The Court finds that "in reporting conduct that interfered with [her] ordinary job duties, [King] spoke

12

pursuant to those duties." Alves, 804 F.3d at 1165. Thus, King's First Amendment retaliation claim fails at the first stage of the analysis, and must be dismissed. Cf. Blanchard v. City of Winter Haven, No. 8:09-cv-2049-T-33AEP, 2011 WL 1166892, at *8 (M.D. Fla. Mar. 28, 2011)(dismissing First Amendment retaliation claim because "[t]he complaint was not filed in Blanchard's role as a citizen, but in his role as a wrecker operator on the rotational list"). However, King may amend her First Amendment retaliation claims.

### B. Whistleblower Retaliation

In Counts I and II, King and OHC bring claims for public employee whistleblower retaliation against the County. Florida's Whistleblower Act exists "to prevent agencies and independent contractors from taking retaliatory action against an employee who reports danger to the public's health, safety, or welfare or who alleges improper use of governmental office, gross waste of funds, or other abuse or gross neglect of duty." Competelli v. City of Belleair Bluffs, 113 So. 3d 92, 94 (Fla. 2d DCA 2013). "The public whistleblower statute is remedial, and courts should construe it broadly." Id. at 93.

In order to state a claim under the statute, a plaintiff must allege that (1) he or she engaged in a statutorily

13

protected activity; (2) he or she suffered an adverse employment action; and (3) there existed a causal connection between the two events. See Castro v. Sch. Bd. of Manatee Cty., Fla., 903 F. Supp. 2d 1290, 1302 (M.D. Fla. 2012).

A disclosure is protected under the statute if the information revealed includes "[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare" or "[a]ny act or suspected act of gross mismanagement, malfeasance, [or] misfeasance . . . committed by an employee or agent of an agency or independent contractor." Fla. Stat. § 112.3187(5).

The Amended Complaint's allegations that Baker-Buford submitted the suspected false medical records for Mr. J and called to cancel Mr. J's appointment with the specialist physician while pretending to be Mr. J's attorney plausibly qualify as malfeasance, which is "the doing of an act which a person ought not do at all," or misfeasance, which is "the improper doing of an act which a person might lawfully do." Burden v. City of Opa Locka, No. 11-22018-CIV, 2012 WL 4764592, at *10 (S.D. Fla. Oct. 7, 2012)(citations omitted).

14

For disclosures concerning a local governmental entity like the County, "the information must be disclosed to a chief executive officer" or "other appropriate local official." Fla. Stat. § 112.3187(6). Additionally, the disclosure of a violation or suspected violation must be made in a signed written complaint, if disclosed on the employee's own initiative or to the employee's "supervisory officials." Fla. Stat. § 112.3187(7). But if the disclosure is made pursuant to a "request[] to participate in an investigation, hearing, or other inquiry conducted by any agency or federal governmental entity," there is no writing requirement. Id.

The County argues that King and OHC fail to meet the writing requirement. The Court disagrees. Although King's disclosures to Freeman and Thomas were oral, the Amended Complaint states that King sent emails to Kushner and Baker-Buford regarding her concerns over Mr. J's medical fitness and placement in firefighter training despite his medical issues. (Doc. # 23 at ¶¶ 20, 29). An email qualifies as a signed writing. Scheirich v. Town of Hillsboro Beach, No. 07-61630-CIV, 2008 WL 186621, at *14 (S.D. Fla. Jan. 18, 2008)(stating "[t]hese alleged complaints in the form of a report, letter, and email messages meet the writing requirement of § 112.3187(7)"). Also, King and OHC have

sufficiently alleged that Kushner, as director of risk management for the County, was an appropriate official who had authority to investigate misconduct by County employees to whom King could report her public safety concerns. See Saunders v. Hunter, 980 F. Supp. 1236, 1246 (M.D. Fla. 1997)(denying motion to dismiss because "plaintiff allege[d] she reported the incidents not to a chief executive officer but to her supervisors who are appropriate local officials").

Even if King's emails were not sent to the appropriate officials, the Amended Complaint alleges that Kushner requested King participate in an investigation, during which she made a disclosure about Baker-Buford's conduct, and therefore a writing would not have been required. King claims that Kushner asked her to review Mr. J's medical records to determine whether they contained "falsified medical information." (Doc. # 23 at ¶ 19). This allegation — that the County's director of risk management contacted King to review records for signs of falsification — suffices to establish at this juncture that King was asked to assist in an investigation of misconduct rather than asked to perform her ordinary duty of providing medical fitness evaluations.

Furthermore, King and OHC have plausibly alleged a causal connection between King's disclosures to Kushner,

16

Baker-Buford, Thomas, and Freeman and the nonrenewal of OHC's contract with the County. In the Amended Complaint, King alleges that Thomas, a member of the selection committee, asked King during her interview whether King would handle Mr. J's certification differently if given the chance, at least giving rise to an inference that King's disclosures were a consideration during the contract renewal process. (Doc. # 23 at ¶ 44). After the interview, OHC and King's contract proposal was rejected despite other committee members' statements that they had voted in favor of King's proposal. (Id. at ¶¶ 51-54). Taking these allegations as true, King and OHC have plausibly alleged that the County decided not to renew the contract with OHC because of King's disclosures.

Finally, it is not clear on the face of the Amended Complaint whether King and OHC's claims are time-barred. Under the whistleblower statute, a claim under Florida's whistleblower statute must be brought within 180 days of the violation. Fla. Stat. § 112.3187(8). King alleges that the adverse employment action — the nonrenewal of her contract — took place on March 24, 2016, at the latest, when the County formally rejected King's proposal for the occupational health program. (Doc. # 23 at ¶ 48). King and OHC filed the original Complaint in this Court on September 15, 2016, which is only

17

175 days after the alleged adverse employment action. (Doc. # 1). Therefore, at this juncture, the whistleblower retaliation claims do not appear to be time-barred.

In light of the broad interpretation of the statute, the Court finds that King and OHC have stated plausible claims for whistleblower retaliation under Florida law.

## IV. Conclusion

King and OHC have stated plausible claims under Florida's public employee whistleblower statute. Thus, Counts I and II survive the motion to dismiss stage.

However, regarding the Amended Complaint's First Amendment retaliation claims, King's allegations indicate that she spoke as an employee and her speech does not implicate the First Amendment. Therefore, King's claims for First Amendment retaliation, Counts III and IV, must be dismissed. King may amend her Amended Complaint to state a First Amendment retaliation claim, if possible, by January 23, 2017.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Motions to Dismiss (Doc. ## 34, 35, 36, 37) are **GRANTED IN PART AND DENIED IN PART**. Counts III and IV are dismissed with leave to amend.

(2) Plaintiffs Dr. Nancy King and the Occupational Health Center, Inc., may file a second amended complaint by **January 23, 2017**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of December, 2016.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

19